**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JACK SUNSERI and CONSOLIDATED
PARTNERS, LTD.,

                CASE NO. 05-73108

    Plaintiffs,              HON. LAWRENCE P. ZATKOFF

v.

PHYLLIS PROCTOR, CONRAD PROCTOR,
DAVID PROCTOR, PHYLLIS D. PROCTOR TRUST,
ANDERSON-PROCTOR LIMITED PARTNERSHIP,
PROCTOR, L.L.C., and ANDERSON-PROCTOR, L.L.C.,

    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November 3, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This case is before the Court upon cross-motions for summary judgment. Plaintiffs filed their

Motion for Summary Judgment (Docket # 36) on August 4, 2006, and Defendants responded on

September 7, 2006. On August 7, 2006, Defendants filed their own Motion for Summary Judgment

(Docket # 39), to which Plaintiffs responded on September 7, 2006. Each party has since filed a

reply to the other's response, along with hundreds of pages of exhibits. The Court finds that the facts

and legal arguments are adequately presented in the parties' papers and the decision process would

not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is

hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons,

Defendants' Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART,

and Plaintiffs' Motion for Summary Judgment will be DENIED.

## II. BACKGROUND

This case arises out of a dispute between alleged partners in a general partnership, and dates back over eighteen years. The basis for the current suit is a judgment in the amount of $5,984,686.01 in Plaintiffs' favor entered on April 8, 2005, by a New York court against Macro Cellular Partners ("Macro"), a general partnership. (*See* Docket # 45, Ex. 13). Defendants in the current suit were allegedly partners in Macro. Plaintiffs brought the current suit seeking to collect the unsatisfied portion of the New York judgment from Defendants' personal assets. (*See* Pls.' Compl.).

Macro was formed in 1988 as a general partnership with the purpose of participating in Federal Communications Commission ("FCC") cellular phone lotteries. (*See* Docket # 45, Ex. 1). Participants in these lotteries sought licenses for cellular airspace in rural markets throughout the country. Macro initially consisted of ten general partners, each owning a 10% interest in the partnership. (*See id.*). Defendant Conrad Proctor, a Michigan ear, nose and throat doctor who had been involved with other similar ventures, introduced the opportunity to become a partner in Macro to his son David. (*See* Docket # 36, Ex. A at 27-31, 80, 83). On June 7, 1988, David agreed to become an original partner in Macro, and Conrad paid for David's initial capital contribution. (*See* Docket # 45, Ex. 1; Docket # 36, Ex. A at 86-88, C). Conrad also paid for many of David's subsequent capital calls to Macro and, to his knowledge, David has not personally paid any money to Macro. (*See* Docket # 36, Ex. A at 86-88, C). David executed a general power of attorney in favor of Conrad in September 1990, which gave Conrad full authority to act on David's behalf with regard to Macro. (*See* Docket # 36, Ex. E).

In 1989, Macro won a FCC lottery and was awarded a license for the Ohio-4 RSA Cellular

Market. Macro originally intended to develop this market, but agreed to sell its license to Cellular Communications, Inc. ("CCI"), in 1991 for several installments of cash and stock totaling approximately $20 million. Several months prior to the agreement with CCI, on January 2, 1991, Conrad Proctor, on David's behalf, drafted a letter to Macro, which David signed, instructing the managing partner to transfer his "interest in the Ohio-4 RSA Cellular Market" to his mother, Phyllis D. Proctor. (*See* Docket # 36, Ex. A at 132, G). Thereafter, on February 9, 1991, Conrad Proctor again wrote to the managing partner of Macro, this time on Phyllis's behalf, informing the partner that Phyllis transferred "all rights, title and interest" in the "10% interest in Ohio-4 RSA Cellular Market" to the Phyllis D. Proctor Trust. (*See* Docket # 36, Ex. A at 132, H). Nearly a year later, on February 3, 1992, Conrad, writing on Phyllis's behalf, instructed the managing partner to transfer Phyllis's "interest in the Ohio-4 RSA Cellular Market to: Phyllis D. Proctor Trust." (*See* Docket # 36, Ex. A at 132, I). The Proctors have indicated that these transfers were limited to an income interest in the partnership and did not purport to transfer a partnership interest. (*See* Docket # 45, Ex. 28 at 80, Ex. 7 at 50-51). Furthermore, Phyllis Proctor has stated that she never intended to become a partner in Macro. (*See* Docket # 45, Ex. 7 at 72-73).

After receiving the interest from David Proctor, Phyllis was identified as a general partner in Macro by several Macro documents. (*See* Docket # 36, Ex. J, K, N). Specifically, Phyllis signed and seconded partnership resolutions that identify her as a general partner in Macro. (*See* Docket # 36, Ex. J, K). Moreover, Macro meeting minutes refer to Phyllis as a general partner and indicate that she was present, either in person or by proxy, at meetings on February 16, 1992, April 17, 1992, and April 17, 1993. (*See* Docket #36, Ex. K, N). Phyllis, however, testified at her deposition that she had no memory of signing any documents, but acknowledged that they bear her signature. (*See*

3

Docket # 45, Ex. 7 at 50-51, 72-73). Conrad Proctor indicated that these documents were signed at the request of Macro's attorney and managing partner because he and Phyllis trusted their judgment. (*See* Docket # 45, Ex. 9 at 206-07). Furthermore, Phyllis expressly denied ever attending any partnership meeting, participating in any partnership conference call, or participating in any partnership business whatsoever. (*See* Docket # 45, Ex. 7 at 72-73).

In 1992 or 1993, Macro was threatened with litigation by a company called Astronet. In response to this threat, Conrad Proctor drafted a letter to Macro, on behalf of Phyllis, informing the partnership that she intended to resign as a general partner. (*See* Docket # 36, Ex. A at 144-46, P). The Proctors also drafted another letter in which they state that the transfer from David to Phyllis in 1991 only transferred David's income interest in Macro. (*See* Docket # 36, Ex. P). The Proctors have since stated that these letters were drafted on the advice of counsel to clarify that Phyllis was never intended to be a partner in Macro. (*See* Docket # 45, Ex. 9 at 206-07).

Various other documents also identify Conrad and Phyllis Proctor as partners in Macro. From 1991 to 1994, Phyllis Proctor received K-1 tax forms for her income from Macro that refer to her as a general partner. (*See* Docket # 36, Ex. R). Furthermore, a letter from Macro's general partner in 1992 in connection with the Proctors' mortgage application states that they are 10% owners of Macro. (*See* Docket # 36, Ex. V).

Plaintiff Jack Sunseri acquired his interest in Macro by an assignment from his father, Anthony Sunseri, in July 1991. (*See* Docket # 36, Ex. DD). That same year, Macro moved its principal place of business from California to Florida, and subsequently resolved to be governed under Florida law, retroactive to September 1991. (*See* Docket # 39, Ex. B). Beginning in 1992, a dispute arose between the Sunseris and the other partners in Macro involving the management of

4

the partnership and various other partnership decisions. As part of this dispute, Macro resolved to withhold distributions to the Sunseris to off-set litigations costs the other partners attributed to the Sunseris. (*See* Docket # 46, Ex. B at 9-10). The bulk of the withholdings consisted of the proceeds of the agreement with CCI in 1991. (*See id*.)

Also in 1992, Jack Sunseri, believing that Conrad Proctor was a partner in Macro, gave him two proxies to vote at Macro partnership meetings. (*See* Docket # 36, Ex. DD). Jack Sunseri, although nominating David Proctor for a partnership management position prior to giving Conrad proxies, and referring to David Proctor as a Macro partner after, believed that due to Conrad's involvement with Macro, Conrad Proctor was a partner. (*See id*.; Docket # 45, Ex. 17, 18). Jack Sunseri has stated that based on his personal knowledge David Proctor did not participate in any partnership business. (*See* Docket # 36, Ex. DD). However, there is some indication that Jack Sunseri never physically attended any partnership meetings. (*See* Docket # 46, Ex. B at 9).

In 1996, Anthony Sunseri filed suit in California against Macro to recover the distributions he felt were wrongfully withheld. In connection with this litigation, Jack Sunseri filed a declaration stating that his father, Anthony Sunseri, was the general partner in Macro and was entitled to the Sunseri share of Macro's profits. (*See* Docket # 39, Ex. C). However, the California court dismissed this case with prejudice as a sanction for Anthony Sunseri's failure to appear at a deposition.

Later in 1996, Plaintiffs commenced suit in New York against Macro. Plaintiffs served the current Defendants with a copy of the summons and complaint for the New York action, but did not name them as parties. (*See* Docket # 36, Ex. S). Plaintiffs asserted that Macro had breached the partnership agreement, breached its fiduciary duties, and deprived Jack Sunseri of his share of the Macro profits. (*See* Docket # 45, Ex. 11). All of the claims were predicated on Plaintiffs' assertion

that Macro had wrongfully withheld or intentionally converted the Sunseris' share of the profits in Macro. (*See id.*). Plaintiffs sought $1.8 million in compensatory damages. Essential to Plaintiffs' request was the fact that CCI merged with a company called Airtouch Communications, which gave the partners in Macro, as holders of CCI stock stemming from the 1991 agreement, an option to convert their shares into common stock or cash. The Sunseris' share was eventually converted to cash and held by the New York court pending the outcome of the litigation. Also significant was the fact that the surviving company of the Airtouch/CCI merger announced a later merger with yet another wireless company, the Vodaphone Group, adding further value to the Sunseri share.

In May 1998, the New York court granted Plaintiffs partial summary judgment on their claim of breach of the partnership agreement. (*See* Docket # 39, Ex. E). The court then released approximately $1.4 million to the Sunseris. Later in the litigation, in relation to a counterclaim, Conrad Proctor testified on behalf of Macro. (*See* Docket # 50, Ex. L). Plaintiffs assert that he admitted his status as a partner in Macro during his testimony. However, Plaintiffs have taken the one line of testimony out of context and, as Defendants make clear, Conrad Proctor clarified his statement, unambiguously stating that David, not he, was the partner in Macro. (*See id.*).

In 1999, Plaintiffs sought leave to amend their complaint in order to add additional claims and to join all of the Macro partners individually to the suit, including Defendants in the present case. (*See* Docket # 39, Ex. F). The court granted substantially all of the motion save for Plaintiffs' request join the partners individually. (*See id.*). The court concluded that to add additional parties after pursuing the partnership alone for nearly four years would be severely prejudicial and a waste of judicial resources. (*See id.*). Following this denial, Plaintiffs filed a virtually identical suit in Florida federal court, naming the individual partners as defendants. (*See* Docket # 39, Ex. G). In

6

connection with the Florida suit, Defendants submitted affidavits in which they state they were general partners in Macro at all relevant times. (*See* Docket # 36, Ex. X). Defendants now claim that, due to attorney oversight, the affidavits were erroneous insofar as they identifed Defendants as partners in Macro. (*See* Docket # 45, Ex. 9 at 274-75, Ex. 21). Nevertheless, the Florida court, without considering the affidavits, dismissed the suit for lack of subject matter jurisdiction because the parties were not completely diverse. (*See* Docket # 39, Ex. H). This decision was affirmed by the Eleventh Circuit. (*See id*.).

Finally, in 2005, after over a decade of litigation, the New York court ruled that Macro had wrongfully failed to properly respond on Plaintiffs' behalf to the notice from CCI regarding converting the Sunseri CCI preferred stock into CCI common stock, and entered a judgment against Macro in the amount of $5,984,686.01. (*See* Docket # 39, Ex. I; Docket # 46, Ex. B). This figure was based on the trial court's finding that the Sunseris would have held the stock to gain the benefit of the subsequent merger between Airtouch/CCI and the Vodaphone Group in 1999.

Unfortunately for Plaintiffs, Macro had no assets from which to satisfy this judgment. (*See* Docket # 46, Ex. L). Plaintiffs now seek to collect from the personal assets of Macro's partners, who are jointly and severally liable for this debt. (*See* Pls.' Compl.). Plaintiffs have successfully collected against at least one partner already in Texas. (*See* Docket # 46, Ex. J).

Plaintiffs filed their motion for summary judgment claiming that Defendants are general partners in Macro and, as such, are jointly and severally liable for the partnership obligation resulting from the New York judgment. (*See* Docket # 36). Defendants also filed for summary judgment arguing that the New York judgment cannot be enforced against them because they were not subject to personal jurisdiction in New York and were not parties to that action. (*See* Docket #

7

39).

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PRO. 56(c); *accord Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005); *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249 (citations omitted). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. PRO. 56(e); *Celotex*, 477

U.S. at 324. Thus, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts; it must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *See Matsushita,* 475 U.S. at 586; *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003); *Gaines v. Runyon*, 107 F.3d 1171, 1174-75 (6th Cir. 1997). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *accord Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005).

These same rules of review also apply where the parties have filed cross-motions for summary judgment. *See Westfield Ins. Co. v. Tech Dry Inc.*, 336 F.3d 503, 506 (6th Cir. 2003); *In re Markowitz*, 190 F.3d 455, 463 n.6 (6th Cir. 1999). The court must evaluate each motion on its own merit and draw inferences against the party whose motion is being considered. *See Markowitz*, 190 F.3d at 463 n.6; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). Just because both sides have filed motions for summary judgment does not mean that the case must be decided by summary judgment. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). The filing of a motion for summary judgment by one party also does not preclude that party from arguing that there are issues of fact which preclude the granting of summary judgment to the adversary party. *See Cherokee Ins. Co. v. E.W. Blanch Co.*, 66 F.3d 117, 123 n.4 (6th Cir. 1995).

## IV.  ANALYSIS

In the present case, the parties have filed cross-motions for summary judgment. Accordingly, the Court will discuss each in turn. However, because Defendants' motion could be dispositive of the entire case, it will be discussed first.

## A.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment based on two constitutional arguments. Defendants argue first that they cannot be bound by the New York judgment against Macro because they did not have sufficient contacts with New York such that the New York court could not assert personal jurisdiction over them. Consequently, Defendants claim, the New York judgment cannot be given full faith and credit in this Court, and Plaintiffs' case should be dismissed. Second, Defendants argue that Due Process requires the Court to dismiss Plaintiffs' claims because Defendants were neither served as parties to the New York litigation, nor did they appear to contest any claims against them. The facts concerning the issues of personal jurisdiction, full faith and credit, and due process are not disputed; however, the legal conclusions to be drawn from those facts are in dispute.

### 1.  Personal Jurisdiction and Full Faith and Credit

As an initial matter, having reviewed the parties' submissions thus far the Court concludes that the issue presented is not whether full faith and credit requires the Court to dismiss the case, but whether Plaintiffs should be forced to relitigate the issue of Macro's liability. Defendants claim that because they were not subject to personal jurisdiction in New York, the Court cannot execute the New York judgment against their personal assets. However, this is not what Plaintiffs ask the Court to do. Instead, Plaintiffs argument is based on the fact that full faith and credit requires the Court to recognize the validity of the judgment as to Macro. As will be discussed below, the valid judgment against Macro, while not enforceable against Defendants' personal property, can be used to preclude the relitigation of issues necessarily decided in New York.

Full faith and credit demands that states give maximum recognition to valid judgments entered by a court in a sister state. *See* U.S. Const. art. IV, § 1. The Full Faith and Credit Act extends

this principal to federal courts and requires that "such ... judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Thus a federal court must give maximum recognition to a valid state court judgment. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75 (1984). However, full faith and credit need not be given to a judgment rendered against a person who was not subject to that court's jurisdiction. *See W. Union Telegraph Co. v. Gotlieb*, 368 U.S. 71, 75 (1961) ("[A] state court judgment need not be given full faith and credit ... as to parties not subject to the jurisdiction of the court that rendered it."). Thus where the court in the first cause of action did not have the power to enter a judgment against an individual because it lacked personal jurisdiction, a second court does not have to afford the first court's judgment full faith and credit. *See id.*

There is no question that the New York court did not have personal jurisdiction over Defendants, and could not render a judgment against them personally. Defendants' evidence, principally their affidavits, establishes that they have virtually no contact with the State of New York such that they could be subject to personal jurisdiction there. (*See* Docket # 42). There is no evidence that any of the current Defendants ever had a physical presence in New York, conducted business there, committed a tort or caused an injury to occur there, or consented to New York's jurisdiction. Plaintiffs cannot dispute these facts and have only presented evidence that Defendants received a copy of the summons and complaint from the New York court. Nevertheless, without a basis for asserting personal jurisdiction, a summons and complaint could not have subjected Defendants to personal jurisdiction in New York. *See* 16 *Moore's Federal Practice* § 108.01(2) (Matthew Bender 3d ed. 2000). Therefore, the Court agrees with Defendants that the New York

11

judgment against Macro cannot be extended to reach their personal assets. However, the Court finds that the lack of personal jurisdiction over Defendants does not deprive the New York judgment against Macro of all validity.

The New York judgment is entitled to the same full faith and credit it would receive in New York. *See* 28 U.S.C. § 1738. It is undisputed that the New York court had personal jurisdiction over Macro because it waived this defense by not raising it in a timely manner. Therefore, the New York judgment is entitled to the same full faith and credit from this Court as it would receive in New York as to Macro. Consequently, while the judgment cannot be executed against Defendants' personal assets, the issues necessarily decided against Macro may be given preclusive effect against Defendants should any of them be determined to be partners in Macro.

The broad doctrine of res judicata encompasses both claim preclusion (res judicata) and issue preclusion (collateral estoppel). *See Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999); *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). Under issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation. *See Montana v. United States*, 440 U.S. 147, 153-54 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979); *Stern v. Mascio*, 262 F.3d 600, 608 (6th Cir. 2001); *Electrical Workers Local 58 Pension Trust Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 659 (6th Cir. 2000). The party seeking the benefit of issue preclusion bears the burden of proof. *See Browning v. Levy,* 283 F.3d 761, 771-72 (6th Cir. 2002). When the prior judgment was entered in state court, that judgment is entitled to the same preclusive effect that it would receive under the law of the state where it was entered. *See Migra,* 465 U.S. at 80-85; *Stemler v. Florence*, 350 F.3d 578, 586 (6th Cir.

12

2003), *cert. denied,* 125 S.Ct. 61 (2004). The state's law of collateral estoppel will be consulted to determine preclusion. *See McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005).

Under New York law, "[t]he doctrine of collateral estoppel precludes a party from relitigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985) (internal quotations omitted). Avoiding relitigation of a decided issue and the possibility of an inconsistent result are the policies underlying its application. *See Buechel v. Bain*, 97 N.Y.2d 295, 303 (2001). Two requirements must be satisfied before the doctrine is invoked: "[f]irst, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman,* 65 N.Y.2d at 455. New York courts have noted, however, that collateral estoppel is "an equitable doctrine ... grounded on concepts of fairness and should not be rigidly or mechanically applied." *D'Arata v. New York Cent. Mut. Fire. Ins. Co.*, 76 N.Y.2d 659, 663 (1990). "In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results." *Staatsburg Water Co. v. Staatsburg Fire Dist.*, 72 N.Y.2d 147, 153 (1988) (citations omitted).

New York courts have analyzed the full and fair adjudication requirement, and precluded partners from relitigating issues decided in a prior litigation against the partnership, based on the concept of privity. *See Buechel*, 97 N.Y.2d 295. *See also Chase Manhattan Bank, N.A., v. Celotex Corp.*, 56 F.3d 343 (2nd Cir. 1995) (applying New York law on issue of res judicata); *FMB Systems,*

*Inc. v. Merriam Gateway Assoc.*, 254 A.D.2d 454 (1998). "In analyzing privity, courts must carefully analyze whether the party sought to be bound and the party against whom the litigated issue was decided have *a relationship that would justify preclusion*, and whether preclusion, with its severe consequences, would be *fair under the particular circumstances*." *Buechel*, 97 N.Y.2d at 304-05 (emphasis added). This entails a functional analysis of the formalities of the legal relationship, focusing on the incentives and interests of the earlier party compared to those of the party against whom issue preclusion in sought. *See id.* at 304; *Chase Manhattan*, 56 F.3d at 346.

In the New York litigation between Macro and the current Plaintiffs, the court necessarily decided the issue of Macro's liability to Plaintiffs and the amount of damages. Because partners in a general partnership have potentially unlimited liability for partnership debts, the partners in Macro had the same incentives and interests as Macro in defending against Plaintiffs' claims in the earlier suit, at least on the issue of Macro's liability. The New York litigation took place over nearly ten years and the parties thoroughly litigated the issues of liability and damages. Fairness and the need for stability and conclusiveness in judgments dictate that a partner having the same interests and incentives as the partnership should not be allowed to relitigate the issues of partnership liability when those interests and incentives were already scrupulously advanced by the partnership, regardless of whether he was a named party to the prior suit or subject to personal jurisdiction.

However, since the issue of whether collateral estoppel actually applies in this case is not before the Court on the present motion, it is sufficient to state that the lack of personal jurisdiction over Defendants in the New York litigation does not warrant dismissing Plaintiffs' claim. While Defendants correctly state the application of full faith and credit as to the enforcement of foreign judgments in that a foreign judgment cannot be enforced against a party that was not subject to

14

personal jurisdiction in the first action, Plaintiffs are not requesting the Court to execute the New York judgment. Instead, Plaintiffs are seeking a subsequent judgment against Macro's partners individually. In other words, Plaintiffs do not claim that the New York judgment entitles them to levy against Defendants' personal property; rather they argue if any or all Defendants in the current action are found to be partners in Macro, then they should be collaterally estopped by the factual findings of the New York court as to Macro's liability to Plaintiffs. The existence of personal jurisdiction in the first action is not necessary to give the factual findings from the first action preclusive effect in a subsequent action. Therefore, Defendants' argument that the New York judgment cannot be enforced against them as a matter of full faith and credit simply does not address the real issue in this case.

As will be discussed below, there are genuine factual issues as to whether or not certain individuals or entities were partners in Macro. If found to be partners in Macro, then the principles of collateral estoppel may preclude those Defendants from relitigating issues necessarily decided in the New York litigation. This is because their interests as to these issues would have been sufficiently advanced and protected by Macro's defense in the New York litigation, not because the New York judgment automatically rendered them liable to Plaintiffs. Plaintiffs still must demonstrate that Defendants were partners in Macro and that collateral estoppel actually does apply.

### 2. Procedural Due Process

Defendants next contend that to hold them personally liable based solely on the New York judgment would violate their right to procedural due process. Defendants argue that they were not parties to the New York litigation, did not receive notice as parties, and did not appear as parties. Thus, Defendants claim that holding them liable to Plaintiffs based solely on the New York

judgment would violate their fundamental rights of notice and an opportunity to be heard. Contrary to Defendants' contention, however, they would not be held personally liable based solely on the New York judgment. The parties have not presented, and the Court's independent research has not found, any controlling authority on this issue. However, this issue has been considered by several other circuits and state courts, and the Court finds these decisions persuasive. *See Valley Nat'l Bank of Arizona v. A.E. Rouse & Co.*, 121 F.3d 1332 (9th Cir. 1997); *14th RMA Partners, L.P. v. Reale*, 100 F.3d 278 (2nd Cir. 1996); *U.S. v. Sohn*, 971 F.Supp. 488 (D. Or. 1997); *Duncan, Inc. v. Head*, 519 So.2d 1305 (Ala. 1988); *Dayco Corp. v. Fred T. Roberts & Co.*, 192 Conn. 497 (1984); *Warner v. Lancia*, 46 Conn.App. 150 (1997); *Brunsoman v. Seltz*, 414 N.W.2d 547 (Minn. 1988).

The Connecticut Supreme Court addressed the issue of due process concerning partners in a general partnership in *Dayco*. In *Dayco*, an arbitration award was entered against a general partnership and the state court confirmed the award against the partnership only. *See Dayco*, 192 Conn. at 499. The defendant was present at the arbitration proceeding but was not named and did not appear as an individual defendant. *See id.* When the partnership failed to pay the judgment, the plaintiff commenced suit against the general partners individually. *See id.* at 500. The defendant claimed that he could not be held personally liable as a matter of due process since he was not named as a defendant in the arbitration proceeding and judgment was entered against the partnership only. *See id.* at 501. The Connecticut Supreme Court disagreed.

The court first noted that under the Connecticut partnership statute, partners in a general partnership were jointly liable for all partnership obligations. *See id.* The court then rejected the defendant's argument that in order to hold the partners personally liable for a judgment entered against the partnership only they would have to be named and personally served as defendants at

16

the beginning of litigation stating:

> What these statutes reveal is axiomatic: in an action against a partnership, in which
> only the partnership is named as a defendant and the result is a judgment against the
> partnership, a plaintiff cannot attach the individual property of the partners or levy
> upon their individual property. *This does not prevent a plaintiff, when it finds the
> partnership without assets and its judgment debt unsatisfied, from instituting suit
> against the individual partners to hold them liable for that debt*. To hold otherwise
> would insulate partners from their joint liability for a partnership debt.

*Id.* at 504 (emphasis added).

The court then rejected the defendant's due process argument. The court recognized, as a

matter of due process, "the establishment of the personal liability of the general partners requires

a legal proceeding in which (whether local practice requires him to be named personally or not) the

individual partner thus pursued is personally served with process or notice." *Id.* (quoting *Detrio v.

U.S.*, 264 F.2d 658, 661 (5th Cir. 1959)). Contrary to the defendant's argument, the court found that

due process was not offended because the defendant's liability did not stem from the arbitration

proceeding in which he was not a defendant, but by being properly served in the current proceeding.

*See id.* at 505.

Relying on the rationale in *Dayco*, the court in *U.S. v. Sohn* reached a similar result. The

issue before the court in *Sohn* was "whether, when a creditor seeks and obtains judgment against a

partnership without naming the partners as individual defendants, the creditor may, after exhausting

the partnership's assets, seek satisfaction of the remaining debt against the individual partners."

*Sohn*, 971 F.Supp. at 489. The defendants were partners in a general partnership. *See id.* at 488. A

judgment was entered against the partnership in a prior litigation; however, the defendant partners

were neither named nor summoned in the prior suit. *See id.* After exhausting partnership assets, the

plaintiff commenced the current action against the partners' personal assets. *See id.* The court first

17

noted that under the Uniform Partnership Act, "state and federal cases ... have uniformly allowed a second suit against the partners when the creditor follows proper procedures for serving the partners and obtaining judgment against them." *Id.* at 490. Following the court in *Dayco*, the *Sohn* court concluded that having properly served defendants in a separate action for the unsatisfied portion of the partnership debt, the plaintiff's suit was proper. *See id.* at 491.

The Second Circuit's conclusion in *14th RMA Partners* is in accord with those in *Dayco* and *Sohn*. *See 14th RMA Partners*, 100 F.3d 278. There the court held that a partner need not participate in the case against the partnership in order to be personally liable for the partnership's debt in a subsequent suit. *See id.* The Second Circuit reasoned:

> There is no rule exempting a plaintiff from the requirement of either naming the partner in the original suit against the partnership, or initiating a subsequent suit against the partner. If there is a subsequent suit, however, it is only for the purpose of affording the partner the opportunity to contest the limited issue of whether or not the defendant is in fact the general partner of the partnership. The validity of the judgment against the partnership cannot be relitigated. The general partner's liability is derived from having been properly served in the subsequent proceeding, and does not stem from his participation, if any, in the earlier action against the partnership itself.

*Id.* 280-81 (internal citations omitted). Accordingly, the court found that the complaint against the general partner in the subsequent suit provided adequate notice and opportunity to be heard to satisfy due process. *See id.* at 281.

Finally, in *Valley Nat'l Bank*, the Ninth Circuit clearly acknowledged the preclusive effect of a prior judgment against the partnership in a subsequent proceeding against the individual partners. *See Valley Nat'l Bank*, 121 F.3d 1332. There the plaintiff obtained a judgment against an Arizona partnership. *See id.* at 1334. Two of the partners in the Arizona partnership were Wyoming partnerships, which were neither named nor served in the underlying suit. *See id.* However, the

18

Arizona partnership did participate in the litigation. *See id.* Since the Arizona partnership had no assets to satisfy the first judgment, the plaintiff filed a second suit against the Wyoming partnerships as partners in the Arizona partnership. *See id.* at 1335. The district court initially held that the first judgment was not binding on the Wyoming partnerships because they had neither been served nor named in the underlying suit. *See id.*

The court of appeals began by acknowledging that "because partners are jointly and severally liable, they may be sued in successive actions for the same claim." *Id.* at 1336. The court, quoting the Arizona statute, found that "in an action against a partnership, judgment is not authorized against unserved partners." *Id.* "This comports with two general common law principles: (1) that a partnership is a party to an action does not itself make the partners parties; and (2) a judgment may not be entered against one not a party to an action." *Id.* (internal citations omitted). The court noted the latter principle was a matter of procedural due process in that due process requires personal service on a partner to bind his individual assets. *See id.* (citing *Detrio*, 264 F.2d at 660).

However, the court  recognized the distinction between subsequently suing partners for the same claim and merely enforcing a prior judgment against partners who were not parties to the prior action. *See id*; *accord Benvenuto v. Taubman*, 690 F.Supp. 149, 153 (E.D. N.Y. 1988). While a judgment against a partnership could not be automatically extended to partners who were not a party to the prior suit and not named in the judgment, the court recognized the collateral effects of the prior judgment in a subsequent suit in which the partners were properly named and served. *See Valley Nat'l Bank* 121 F.3d at 1337; *Benvenuto* 690 F.Supp. at 153. The court relied on the Restatement (Second) of Judgments § 60, which states in pertinent part,

> (1) A judgment in an action by an injured person against a partner upon an obligation or liability incurred in the course of partnership business:

\*\*\*

(b) if in favor of the injured person:

\*\*\*

(ii) renders the property of the partnership subject to execution to satisfy the judgment but is not otherwise binding on a partner who was not a party to the action unless he controlled or participated in controlling the defense of the action, or was given notice of an opportunity to defend the action.

Restatement (Second) of Judgments § 60 (1982). The court explained:

What the drafters of the Restatement meant when they suggested that an unnamed, unserved partner who participates in a defense of the partnership may be "bound" by a judgment against the partnership is that *such a partner may be collaterally estopped from relitigating decided issues in a subsequent litigation*, not that the partner's participation in the defense of the partnership somehow converts a judgment against the partnership into a judgment against the partner.

*Valley Nat'l Bank*, 121 F.3d at 1337 (emphasis added). Thus, the court found that while due process prohibits converting a judgment against the partnership into a judgment against the partner, "the partner may be collaterally estopped from relitigating in a subsequent suit on the original debt issues actually litigated and necessarily decided in the suit against the partnership." *Id.* at 1337-38; *accord Benvenuto*, 690 F.Supp. at 153 ("[W]hile a partner's liability may be conclusively established by a prior adjudication as to the liability of his partner, the plaintiff in the first lawsuit will not be able to execute judgment against an unnamed partner's *individual* property.").

As the foregoing cases illustrate, due process prevents a judgment from being executed against an individual's property when that individual did not have notice of the action or an opportunity to be heard. However, in the case of partners, due process does not necessarily prevent the factual findings as to the partnership's liability in an earlier litigation from having preclusive effect in a subsequent action against the partner individually. *See Valley Nat'l Bank*, 121 F.3d at

20

1337-38. The cases Defendants rely on are consistent with these principles. In all of those cases the courts were in agreement that a judgment against a partnership bound only the joint property of partners who were not a party to the action. This is because the absent partners' personal property could not be subject to a judgment entered only against the partnership consistent with the requirements of due process. There was no doubt, however, that the judgment against the partnership conclusively established the fact of the partnerships' liability and the amount. The only issue was whether that judgment provided access to the partners' personal property. The universal answer was no: a judgement against the partner individually was necessary to access his personal property. *See Detrio*, 264 F.2d 658; *Prado N. Residences, Ltd. v. Prado N. Condominium Ass'n, Inc.*, 477 So.2d 396 (Ala. 1985). Defendants' due process argument is incomplete, however, because their analysis stops at this point.

Unlike the cases Defendants rely on, *Dayco*, *Sohn*, *14th RMA Partners*, and *Valley Nat'l Bank*, address the issue of whether, in seeking a subsequent judgment against a partner, due process would allow the fact of the partnership's liability to be given preclusive effect. The courts that have addressed this issue have found that a partner could be estopped from relitigating the issue of partnership liability, despite not being served or participating in the prior action, consistent with due process. The basis for this finding is the notion that the partner's due process rights of notice and opportunity to be heard on the issue of the partnership's liability would be adequately protected by the partnership in the first litigation. *See Gilbert Switzer & Assoc. v. Nat'l Housing P'ship, Ltd.*, 641 F.Supp. 150, 155-56 (D. Conn. 1986); *Dayco*, 192 Conn. at 505; *Warner v. Lancia*, 46 Conn.App. 150, 163 (1997). However, further process, i.e. personally serving the partner as a defendant and giving him an opportunity to be heard on the issues of his partnership status and the requirements

21

of issue preclusion, was necessary when attempting to levy against the partner's individual property. Where such further process was lacking, as in *Detrio* and *Prado*, the courts correctly prevented the plaintiffs from proceeding against the partners' personal assets.

Unlike *Detrio* and *Prado*, Defendants in the present case had notice of the New York litigation, whether or not they were partners. Plaintiffs served Defendants with a copy of the New York summons and complaint. Furthermore, Conrad Proctor, on behalf of David Proctor, was fully involved in the partnership proceedings and had knowledge of Macro's ongoing litigation. Finally, in contrast to *Detrio* and *Prado*, Defendants' assets are not being sought to satisfy the New York judgment. To the contrary, Plaintiffs are seeking a separate judgment against Defendants in a Court where they are subject to personal jurisdiction, after serving them with process individually.

The Court finds Defendants' argument that because the New York summons did not identify them as partners or individual defendants somehow excuses them from the consequences of not participating in the New York litigation without merit. Defendants, who were all admittedly partners in various partnerships at one time or another, must have known that if they were partners in Macro they would have unlimited liability for its obligations. Thus if they were partners, Defendants would have had every opportunity to be heard in that litigation and could have participated. They cannot now complain that their decision not to appear in New York deprives them of due process when they should have known the potential outcome of an adverse judgment against Macro. If Defendants were not partners in Macro, they now have the opportunity to raise that defense and escape liability. If Defendants are found to be partners in Macro, they have the opportunity to argue the issue of collateral estoppel and to show their interests were not adequately protected by Macro. If their interests were adequately protected, it is not unfair to preclude Defendants from rearguing Macro's

22

liability when they could have done so in New York had they chose to appear. Therefore, as the courts in *Dayco*, *14th RMA Partners*, and *Sohn*, the Court finds that Defendants would not be deprived of their right to due process by allowing Plaintiffs' suit to proceed.

Finally, Defendants' argument that due process requires that they be allowed to litigate their personal conduct is unpersuasive. A consequence of entering into a partnership is that one partner may be held personally liable for partnership obligations based solely on the conduct of another partner. This is the basis of joint and several liability. In the present case, the New York court determined that the partnership breached the partnership agreement and its fiduciary duties to Plaintiffs. As a matter of partnership law, the partners in Macro can be held personally liable for this obligation regardless of their personal conduct. This is a risk of forming a general partnership. Therefore, Defendants' personal conduct, aside from its bearing on the issue of whether they were in fact partners, is irrelevant to the issue of the Macro's liability and, derivatively, the liability of its partners. Since Defendants have been properly served in this case and now have the opportunity to be heard on the issue of partnership, their right to have their personal conduct adjudicated will not be violated by precluding them from arguing the issue of partnership liability. A contrary finding would effectively render the concept of joint and several liability meaningless in partnership law.

The Court concludes that full faith and credit and due process do not require the Court to grant Defendants' Motion for Summary Judgment. Thus, Defendants' Motion for Summary Judgment is DENIED IN PART.

### 3. Anderson-Proctor Family Trust, Proctor, L.L.C., and Anderson-Proctor, L.L.C.

Finally, Defendants argue that Plaintiff cannot establish that the Anderson-Proctor Family Limited Partnership, Proctor L.L.C. and Anderson-Proctor L.L.C., were ever partners in Macro. The

only evidence of record concerning these entities are letters written and signed by Conrad and Phyllis Proctor assigning income interests to or from these family entities. (*See* Docket # 39, Ex. K). Plaintiffs have not presented any evidence regarding these entities that indicates they were ever partners in Macro. Furthermore, there is no evidence indicating that the other partners in Macro agreed, expressly or impliedly, to become partners with these entities.

Based on the fact that the assignments to and from these entities clearly indicates that any transfer was limited to the income derived from Macro, and the fact that Plaintiffs bear the burden of proof regarding partnership, the Court finds that there is no genuine issue of material fact that the Anderson-Proctor Family Limited Partnership, Proctor L.L.C., and Anderson-Proctor, L.L.C. were not partners in Macro. Accordingly, Defendants' motion is GRANTED IN PART as to Counts V, VI, and VII of Plaintiffs First Amended Complaint.

## B.  Plaintiffs' Motion for Summary Judgment

Plaintiffs' motion is based on the judgment from New York holding Macro liable to Plaintiffs. Because partners in a general partnership are jointly and severally liable for partnership debts, Plaintiffs contend that if any or all Defendants are found to be partners in Macro, they should be bound by the factual findings of the Macro's liability in the New York Court. Plaintiffs assert that there is no genuine issue of material fact that Conrad Proctor, Phyllis Proctor, and the Phyllis D. Proctor Trust, were partners in Macro and, therefore, are personally liable for Macro's unsatisfied debt to Plaintiffs. Defendants, with the exception of David Proctor, deny that they were ever partners in Macro.

Defendants state that Macro was initially located in California. Plaintiffs, on the other hand, have provided a partnership agreement signed by David Proctor indicating that Macro was formed

24

under Michigan partnership law. It is undisputed that Macro relocated to Florida in 1991, and the partners agreed that the partnership be governed by Florida law. It is also undisputed that in 1995, the partners adopted Florida's Revised Uniform Partnership Act to govern Macro, retroactive to 1991. Neither party makes an effort to state which state's law is applicable to deciding whether Conrad and Phyllis Proctor, and The Phyllis D. Proctor Trust were partners in Macro. However, Plaintiffs and Defendants have based their arguments on both Florida and Michigan law. The Court finds that there is no substantive difference between Florida and Michigan law on the issue of partnership, and that general partnership principles can be applied for the purposes of resolving the current motion.

A partnership is uniformly recognized as an association of two or more persons, to carry on as co-owners of a business for profit. *See* UNIF. P'SHIP ACT 1997 § 202; UNIF. P'SHIP ACT OF 1914 § 6. Implicit in this definition, and an essential element of a partnership, is the necessity of an agreement. *See Rafael J. Roca, P.A. v. Lytal & Ryter, Clark, Roca, Fountain & Williams,* 856 So.2d 1 (Fla. Dist. Ct. App. 2003); *Bush v. Haire*, 197 Mich. 85 (1917). Such agreement can be express or implied from the conduct of the persons alleged to be partners. *See Byker v. Mannes*, 465 Mich. 637 (2002). In the absence of an express agreement, several factors are consistently used to determine the existence of a partnership. Foremost among these factors is whether the purported partners share in the profits of the business. Sharing in the profits of a business either gives rise to a presumption of partnership or is prima facie evidence that a partnership exists. *See* MICH. COMP. LAWS § 449.7 (2002); FLA. STAT. ANN. § 620.8202 (West 2006). However, any presumption is not conclusive and other factors aiding in the analysis include: the intent of the parties, the investment of capital, the existence of partnership property, and the participation in management and control

25

of the business. *See Dreyfuss v. Dreyfuss*, 701 So.2d 437, 439-40 (Fl. Dist. Ct. App. 1997); *Miller v. City Bank & Trust Co.*, 82 Mich.App. 120 (1978). The existence of a partnership is a question of fact. *See Perez v. Hernandez*, 323 So.2d 4 (Fl. Dist. Ct. App. 1975). Finally, the party claiming partnership has the burden of proving its existence. *See Klein v. Kirschbaum*, 240 Mich. 368 (1927). With these principles in mind, the Court will address Plaintiffs' Motion for Summary Judgment regarding Phyllis Proctor, the Phyllis D. Proctor Trust, and Conrad Proctor.

### 1. Phyllis Proctor

Plaintiffs contend that Phyllis Proctor became a partner in Macro when her son, David Proctor, in a letter dated January 2, 1991, instructed Macro to transfer his "interest in the Ohio-4 RSA Cellular Market" to Phyllis. Plaintiffs assert that because "interest" was not limited to an "income interest," the Court should construe the plain meaning of interest as transferring David's status as a partner. In further support of their motion, Plaintiffs provide evidence that following this transfer Phyllis acted as a general partner in Macro by signing resolutions identifying her as a partner, signing releases identifying her as a partner, and giving Conrad Proctor a proxy to act on her behalf at a partnership meeting. Furthermore, Plaintiffs provided Phyllis Proctor's K-1 tax forms for the years 1991 through 1994 identifying her as a partner and correspondence from other partners in Macro referring to Phyllis as a partner. Finally, Plaintiffs claim that Phyllis admitted that she was a partner in Macro by stating that she was a partner in a 1992 mortgage application and in an affidavit submitted in the Florida litigation.

In defense of this motion, Defendants provide deposition testimony from Phyllis, David, and Conrad Proctor indicating that David's transfer in 1991 only transferred his income interest in the Ohio-4 market. Further, Phyllis clearly stated that she never intended to be a partner in Macro, never

26

took part in any partnership business, any only signed partnership documents at her attorney's request. Moreover, Defendants argue that Macro's records were not accurate as to who they identified as partners. Finally, Defendants argue that based on the partnership statutes in Michigan and Florida, David Proctor could only have transferred an income interest to his mother. *See* MICH. COMP. LAWS §§ 449.24, 449.26-27. *See also* FLA. STAT. ANN. § 620.8503.

Based on the evidence submitted by both parties, the Court finds that there is a genuine issue of material fact concerning whether Phyllis Proctor was a partner in Macro. While Plaintiff argues that the purported transfer of partnership status was not limited to income only, the Court finds that a reasonable jury could infer that David Proctor only transferred the income from the Ohio-4 license. Since there is no dispute that Macro's business was not strictly limited to the Ohio-4 license, a transfer of David's interest in this license would necessarily transfer less than his entire interest in Macro. Furthermore, the Proctor's deposition testimony rebuts Plaintiff's argument as to the intent of the transfer.

Plaintiffs also argue that Phyllis acted as a partner in Macro. The evidence on this issue is also conflicting. While Phyllis signed documents which identified her as a general partner, her testimony directly contradicts this inference. Further, there is no evidence of record indicating what effect, if any, the partnership gave these documents. Based on the Proctors' deposition testimony, these documents could have been unnecessary and merely submitted as precautionary measures on the advice of counsel. Plaintiffs also place great weight on the Proctors' mortgage application and Florida affidavits. However, Plaintiffs have not provided the mortgage application but only a letter from another partner in Macro related to the application, in which the partner informs the mortgage company of the Proctors' interest in Macro. Thus, this letter cannot be taken as the Proctors'

admission. While there is evidence that supports Plaintiffs' argument that Phyllis Proctor was a partner, there is also evidence that supports the conclusion that she was not a partner. In light of Plaintiffs' burden of proof on the issue of partnership, the Court cannot say that Phyllis Proctor was a partner in Macro as a matter of law.

Additionally, Plaintiffs assert that judicial estoppel compels the Court to accept the Proctors' statement that they were partners in Macro from the Florida affidavits as a binding fact. The court disagrees. Judicial estoppel forbids a party from taking a position inconsistent with one successfully asserted in an earlier proceeding. *See Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 452 (6th Cir. 2005). Federal standards govern judicial estoppel. *See id.* First, the position must be clearly inconsistent; second, the prior court must accept the position; and third, the party to be estopped must derive an unfair advantage from its position. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *Pennycuff*, 404 F.3d at 452-53. Where the prior court did not accept or rely on the prior position, judicial estoppel is inappropriate. *See Pennycuff*, 404 F.3d at 453.

The Florida court decided the case based on lack of subject matter jurisdiction. That result was compelled by its finding that complete diversity did not exist because it concluded that Jack Sunseri was a California resident. Thus the Proctors' affidavits were not necessary to the court's conclusion, nor is there any evidence that they were even considered. Accordingly, judicial estoppel is inappropriate in this case.

Finally, Defendants argue that partnership by estoppel should apply to hold Phyllis Proctor liable as a partner. Again, the Court disagrees. Partnership by estoppel requires (1) that a person holds himself out to another as a partner in a partnership and (2) that the other detrimentally relies on this representation. *See McElwee v. Wharton*, 19 F.Supp.2d 766, 772 (W.D. Mich. 1998).

Plaintiffs' claim as to Phyllis Proctor fails for several reasons. First, there is absolutely no record evidence that Phyllis held herself out to Jack Sunseri as a partner or permitted another person to do so. Second, Jack Sunseri admitted that he learned of David Proctor's transfer to Phyllis Proctor only after filing this suit. (*See* Docket # 36, Ex. DD). Third, and more important, there is no evidence that Jack Sunseri detrimentally relied on any purported representation. Therefore, even if Phyllis Proctor had held herself out as a partner, Defendants' claim would still fail for lack of detrimental reliance.

The Court concludes that there is a genuine issue of material fact as to whether Phyllis Proctor was ever a partner in Macro. Based on the current record the Court cannot conclude that Phyllis Proctor was a partner as a matter of law and, therefore, Plaintiffs' Motion for Summary Judgment is DENIED as to Count II.

### 2. Phyllis D. Proctor Trust

Plaintiffs' claim that the Trust was a general partner is unconvincing. The only evidence of the Trust's involvement with Macro is a letter from Phyllis Proctor to Macro instructing that it transfer her interest in the Ohio-4 market to her trust. Plaintiffs argue that this automatically rendered the Trust a partner in Macro. However, as Defendants point out, there is no evidence that the Trust acted as a partner in anyway, was ever represented as a partner at partnership meetings, was ever identified as a partner in any partnership documents, and was ever admitted to the partnership by agreement of the partners.

Plaintiffs have the burden to prove that the Trust was a partner in Macro. *See Kirschbaum*, 240 Mich. 368. As stated, partnership status requires an agreement, express or implied. *See Bush v. Haire*, 197 Mich. 85. Additionally, sharing in the profits of a business is the most probative evidence of partnership. *See* MICH. COMP. LAWS § 449.7; FLA. STAT. ANN. § 620.8202. In the case of the

29

Trust, there is no evidence of agreement and no evidence that it shared in Macro's profits. Based on the record, there is no evidence from which a jury could infer that the Trust was ever a partner in Macro. Accordingly, the Court concludes as a matter of law that the Trust was not a partner in Macro. Therefore, Plaintiffs' Motion for Summary Judgment is DENIED as to Count IV, and, additionally, summary judgment is GRANTED in favor of Defendants.

### 3. Conrad Proctor

Plaintiffs argue that Conrad Proctor was the "straw that stirred the drink" in that he controlled the family's interest in Macro. To support their assertion, Plaintiffs have presented substantial evidence regarding Conrad's involvement with Macro. Conrad bought the investment to the family's attention, paid for David's share of the partnership and all future capital calls, participated in the partnership business as David's agent, drafted most, if not all correspondence between the family and the partnership, and was repeatedly referred to as a partner in Macro's documents. Finally, Plaintiffs argue that judicial estoppel and partnership by estoppel apply to Conrad Proctor.

Defendants have presented evidence to contest Plaintiffs' motion. Principally, Defendants' evidence indicates that Conrad Proctor was acting under a power of attorney while attending to partnership business. Defendants also point out that Macro's records and meeting minutes were often inaccurate as to how they identified persons, specifically failing to indicate that persons in attendance may have been acting in a representative capacity. Furthermore, Conrad Proctor testified under oath in the New York litigation that he was not a partner in Macro and has also submitted an affidavit in this case stating the same.

The Court finds that the evidence presented by the parties thus far prevents it from

30

concluding as a matter of law that Conrad Proctor was a partner in Macro. The evidence is contradictory and, because Plaintiffs are the movants, the Court must draw all reasonable inferences in favor of Defendants. *See Matsushita*, 475 U.S. at 587.

Plaintiffs' evidence does not permit a finding that Conrad Proctor was a partner as a matter of law. While Conrad was substantially involved with the partnership, a jury could infer that he was acting on behalf of his son, consistent with the power of attorney. The fact that Conrad may have been acting as David's agent while tending to partnership business weighs against a finding of partnership in this case. The maintenance of the distinction between principal and agent demands that a person not be found to be a partner based solely on participation in partnership business as an agent. To find otherwise would deter agency relationships in general. Furthermore, unlike Plaintiffs' claim against Phyllis Proctor, there is no evidence whatsoever that Conrad Proctor ever personally received income from Macro. Additionally, the Court finds that Macro's documents referring to Conrad Proctor as a partner are rebutted by his testimony in his deposition and the New York trial. Moreover, Plaintiffs' argument that judicial estoppel should apply to Conrad Proctor based on statements in his Florida affidavit fails for the same reason it does concerning Phyllis Proctor.

Finally, Plaintiffs argue that partnership by estoppel applies to Conrad Proctor. Plaintiffs' only evidence directly relating to this argument is Jack Sunseri's affidavit stating that he thought Conrad Proctor was a partner, that Conrad Proctor told him he was a partner, and that he gave Conrad Proctor a proxy based on his belief. As with Phyllis Proctor, this argument fails as to Conrad Proctor. Conrad Proctor's affidavit directly contradicts Sunseri's by stating that he never told Jack Sunseri he was a partner. Furthermore, Defendants have presented evidence indicating that Jack Sunseri knew David Proctor was the actual partner in Macro before and after he gave Conrad

31

Proctor the proxies. Specifically, Jack Sunseri nominated David Proctor for a position as a managing partner prior to granting the proxy and, in a letter postdating the proxy, referred to David Proctor as a partner. Thus, Jack Sunseri's reliance on any alleged representations by Conrad Proctor would have been unreasonable. Finally, even if he reasonably relied on Conrad's representations, Plaintiffs have provided no evidence suggesting Jack Sunseri's reliance caused him any detriment. Therefore, this argument must fail. Based on the current record the Court cannot conclude that Conrad Proctor was a partner as a matter of law and, therefore, Plaintiffs' Motion for Summary Judgment is DENIED as to Count I.

### V. CONCLUSION

The Court finds that Defendants' argument based on full faith and credit, while technically correct, is not applicable to the present case. Therefore, Defendants are not entitled to summary judgment as to Plaintiffs' entire case. However, Defendants have demonstrated that there is no genuine issue of material fact regarding the partnership status of the Anderson-Proctor Family Limited Partnership, the Phyllis D. Proctor Trust, Proctor, L.L.C., and Anderson-Proctor, L.L.C. Therefore, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Finally, the Court concludes that Defendants have presented sufficient evidence to raise a genuine issue of material fact regarding whether Conrad Proctor and Phyllis Proctor were partners in Macro. Therefore, Plaintiffs' Motion for Summary Judgment is DENIED. Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment be GRANTED as to Counts V, VI, and VII of Plaintiffs' First Amended Complaint and DENIED as to Counts I, II, and III of Plaintiff's First Amended Complaint.

IT IS FURTHER ORDERED that summary judgment in favor of Defendants is GRANTED

as to Count IV of Plaintiffs' First Amended Complaint.

IT IS FURTHER ORDERED that Counts IV, V, VI, and VII of Plaintiffs' First Amended Complaint are HEREBY DISMISSED.

FINALLY, IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  November 3, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 3, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290